## Robert L. McGuire, Adm'r of the Estate of William Beard, v. Charles Muhlenbach.

1. JUDGMENTS—*When to be Reversed.*—Where the evidence is not sufficient to sustain the verdict, the judgment based upon it must be reversed.

2. EVIDENCE—*Of Deceased Witnesses—Power of Appellate Court.*— Where the evidence upon which a verdict is rendered is that repro-

duced of a deceased witness, who testified upon a former trial. the Appellate Court has the same opportunity to judge of the credit which ought to be given to his testimony, or as to the weight of it, as the court below.

**Claim in Probate.**—Appeal from the Circuit Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1895. Reversed and remanded. Opinion filed May 16, 1896.

ALBERT SALZENSTEIN and CONKLING & GROUT, attorneys for appellant, contended that in any view that may be taken of the evidence in the case it does not support or authorize the verdict rendered.

Even in cases where there is a conflict in the testimony, and the jury have seen the witnesses on the stand and had an opportunity of determining the credit of each, if it appears to the Appellate Court that the verdict is unsupported by the evidence or contrary to the weight of it, the judgment on such verdicts will be set aside. C. & A. R. R. Co. v. Means, 48 Ill. App. 394; Starne Coal Co. v. Ryan, 48 Ill. App. 216; Coates v. Mernin, 48 Ill. App. 466; Fulton Co. Narrow Gauge Ry. v. Butler, Id. 301; O'Bannon v. Vigus, 48 Ill. App. 84; Withers v. Kinser, 53 Ill. App. 87.

PATTON, HAMILTON & PATTON, attorneys for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Appellant's intestate, William Beard, died July 19, 1892. Appellee filed claim against the estate as follows:

VIRDEN, Ill., August 1, 1892.

William Beard, estate, etc.

To Charles Muhlenbach, for services as general agent from August 6, 1890, to July 19, 1892.

To twenty-three and a half months at $100 per month..........................................$2,350

For attendance and care during last sickness........  200

$2,550

He claimed an express verbal contract with the deceased to pay him $100 per month for his services from August 6, 1890, and sought to establish such contract by the testimony of one Joseph Delaney. The cause was twice heard by a jury in the County Court. Upon the first trial the jury failed to agree and upon the second returned a verdict in favor of the estate. From a judgment upon the last verdict the appellee appealed to the Circuit Court. The witness, Joseph Delaney, died before the cause was heard in the Circuit Court, and the evidence given by him in the second trial in the County Court was reproduced before the jury in the trial in the Circuit Court. A trial in the Circuit Court before a jury resulted in a verdict and judgment in favor of the appellee for $1,800, from which this appeal was prosecuted. The witness, Delaney, kept a saloon in Springfield. Appellee entered his employ as a bar-keeper some time in the year 1888—and was so employed in 1890, when it is alleged that Beard, appellant's intestate, contracted to pay him $100 per month for his services.

As to this item of appellee's claim the right of recovery is based wholly upon a supposed express contract to pay that sum per month from August, 1890, to the time of the death of Beard.

Delaney was the only witness who testified with relation to the supposed agreement.

A careful consideration of the whole testimony has convinced us the jury should not have regarded the testimony sufficient to establish a contract as claimed.

The jury in the Circuit Court had no better opportunity to judge of the credit which ought have been given the witness Delaney, or as to the weight of his evidence, than has this court.

They did not see him or hear him and it is not inappropriate here to note that two panels of jurors in the County Court who saw him and heard him testify were unwilling to accept him as a reliable witness or to credit his statements as worthy of belief.

The inference readily arises that his appearance and de-

meanor were not such as to inspire confidence or impress others that his statements were entitled to credit.

We do not think the testimony of Delaney, when considered with other attendant well proven facts, warranted the jury in finding the appellee was in the employ of the deceased from August, 1890, to July 19, 1892, to the date of the death of the latter at $100 per month. In August, 1890, appellee was and for some years before had been employed as a bar-keeper in Delaney's saloon in Springfield. He remained a bar-keeper in that saloon after August, 1890, substantially as before, and so continued from thence until in May, 1892, a period of at least twenty months of the time for which appellee claims compensation from the estate of the deceased at the rate of $100 per month under the alleged contract. During this period appellee did some work for the deceased in the way of writing letters, keeping accounts, etc., but it was all done in Delaney's saloon, required but little time and did not substantially interfere with appellee's duties as bar-keeper for Delaney. Appellee during same time kept the saloon accounts for Delaney in addition to the other work in the saloon.

Delaney testified he employed his brother to take appellee's place in the saloon after the supposed contract between Beard and the appellee, and that he paid appellee nothing for his work after that, and that his saloon account books would show when appellee quit working for him and when his brother began.

The books produced before the jury did not contain an account with appellee, but five pages from the body of the book, and the page of the index for the letter " M," had been removed therefrom. A witness testified appellee's name among others was in the index under the letter " M " when he saw the book upon a former occasion.

We find upon the books an account with the witness' brother, from which it appears he began work for the witness December 9, 1888, at $5 per week, and worked until the last of March, 1889, and nothing to show he was employed after this latter date.

It appeared the deceased, Beard, who lived in Springfield in 1890 or 1891 (there being much uncertainty as to the year), was contemplating opening a coal mine and supply store, saloon, etc., in connection therewith, at Virden, Ill. He was a man of some means, had business correspondence to attend to, accounts to be collected, etc.

He was addicted to drinking and was frequently in Delaney's saloon, and it is clear he procured appellee, the barkeeper there, to write letters, keep his books and accounts for him, and for this purpose brought his books, etc., to the saloon and kept them there.

No doubt he had some conversation with appellee in the presence of Delaney about the work and about the contemplated enterprise at Virden and about engaging the services of the appellee.

Delaney, when speaking as a witness before the first jury in the County Court, said, " Muhlenbach was to look after Beard's business. He wanted him right away to look after the business. He was going to start a store down there after he got the coal mine started and wanted him to take charge of the store. Before going down there was no business to look after except a few little accounts here and there. He had no occasion to use Muhlenbach that I know of until he started in business at Virden. Muhlenbach stayed in the saloon and helped me until then."

When testifying before the jury in last trial in the County Court, in answer to a question propounded by counsel for appellee calling for a conversation with the deceased, the witness Delaney stated that Beard on the same day of the alleged making of the contract, or on the following morning, told him he was going to sink a shaft at Virden, and had hired the appellee, but that appellee could stay in the saloon until he got started at Virden, and in the meantime deceased would bring his books to the saloon and make headquarters there, etc.

The books were brought to the saloon and appellee did some work for the deceased as before stated, and attended the bar and kept books for Delaney until in May, 1892, at

which date appellee and deceased went to Virden, the coal mine enterprise being then in actual operation.

Prior to going to Virden, the appellee performed some service for the deceased, which if not paid ought to be recovered against the estate, but the evidence is wholly insufficient to establish that during this period of nearly two years appellee was in the employ of the deceased at $100 per month. That he was so employed at a monthly salary from August 9, 1890, to July 19, 1892, and that nothing was paid during the entire period when all the circumstances are considered, is so highly improbable as to challenge belief.

The testimony of a witness introduced in behalf of the administrator was to the effect the witness had seen the deceased pay the appellee money at different times in Delaney's saloon within eight months before they went to Virden, but appellee's counsel insist and we think with the better reason, such payments were in settlement of bar bills due to Delaney from the deceased, which appellee was collecting as bar-keeper for Delaney. The witness last referred to testified the appellee told him Beard was to compensate him for the work he was doing by engaging him to run a supply store and saloon at Virden after the mine was in operation.

The deceased and appellee went to Virden in May, 1892, and appellee took charge of and ran a saloon in the name of Beard & Co. The deceased bought and paid for the saloon stock, and appellee, in some way not disclosed, became an equal partner therein, though he paid nothing toward the purchase thereof or otherwise, so far as can be known from the record.

Beard died on July 19, 1892, and the appellee claimed and was allowed an interest as equal partner in the saloon.

Appellee rendered service to the deceased while they were at Virden.

The pay roll of the mine was sent to the saloon and appellee there assisted in paying the workmen by drawing checks upon the bank to be signed by Beard. Appellee also wrote some letters for Beard and assisted in settling ac-

counts, etc. During the last illness of deceased appellee and his family waited upon and rendered assistance.

Altogether appellee may be entitled to compensation from the estate for the reasonable value of services rendered, etc., yet the evidence, in our judgment, is insufficient to establish the existence of the contract as claimed.

It is not contended the judgment is supported by evidence the services rendered were reasonably worth the amount allowed by the jury.

The judgment is reversed and the cause remanded.